**44 So.2d 877**

**AUTO-LEC STORES, Inc. v. OUACHITA VALLEY CAMP NO. 10, W.O.W.**

No. 36874.

Feb. 13, 1950.

Lemle, Moreno & Lemle, New Orleans, Irion & Switzer, Sheveport, for plaintiff-appellant.

Sholars & Gunby, B. D. Allbritton, Monroe, for appellee.

HAWTHORNE, Justice.

Plaintiff, Auto-Lec Stores, Inc., instituted this suit to recover damages allegedly resulting from the failure of the defendant, Ouachita Valley Camp No. 10, Woodmen of the World, to sign a contract of lease of certain real estate situated in the City of Monroe.

This is the second time this case has been before this court. Upon the first occasion the lower court had rendered judgment sustaining an exception of no cause or right of action filed by the defendant, which was reversed by this court on appeal, and the case was remanded to be proceeded with according to law. The allegations of plaintiff's petition are fully set out in our previous opinion, which is reported in 185 La. 876, 171 So. 62. That opinion enunciates the law applicable to the case. Upon being remanded to the lower court, the case was tried on the merits, judgment was rendered in favor of defendant, and plaintiff has appealed.

According to our previous opinion, under the allegations of the petition, which were taken as true, defendant prepared the lease, which was presented to, and signed by, the plaintiff, and all rent notes were executed according to its terms; defendant placed plaintiff in possession of the premises and accepted monthly rentals as provided in the lease, but the defendant never signed the lease and refused to do so. Under these allegations this court found that the agreement to lease was complete, carried out to the letter, and thereby became an executed contract, and that the petition therefore stated a cause of action for damages.

The present appeal presents for our consideration only a question of fact, and this was conceded by plaintiff in argument before this court. The trial judge concluded that plaintiff had failed to prove by a preponderance of the evidence the existence of any contract of lease between the parties, and we must determine only whether, from all the facts in the case, he committed manifest error in arriving at this conclusion.

Contrary to the allegations of the petition, the evidence discloses that plaintiff was placed in possession of the premises described in the lease, which defendant allegedly failed to sign or execute, in the latter part of August or the early part of September, 1928, by the Standard Office Supply Company, which was in possession of the premises by virtue of a lease from the defendant which was to expire on March 1, 1929. Prior to taking possession of the premises the plaintiff had approached the defendant for the purpose of negotiating a lease on the premises, to begin at the expiration of the lease held by the Standard Office Supply Company. After negotiations defendant's attorney prepared a written lease, together with rent notes, and submitted the lease and the notes in August of 1928 to an officer of the plaintiff corporation for signature and return This lease as prepared was for a term of five years beginning March 1, 1929, and ending February 29, 1934. The consideration named therein was $22,500.00, represented by 60 notes of $375.00 each, payable on the first day of each month. Some of the terms and provisions of the lease were not acceptable to plaintiff, and, again contrary to the allegations of the petition, no lease contract was in existence at the time the plaintiff

occupied the premises or at any time prior to March 1, 1929, as plaintiff did not sign the lease contract or execute the notes.

Furthermore, on May 23, 1929, approximately nine months after the original lease prepared by defendant had been submitted to plaintiff, the president of the plaintiff corporation sent to defendant a check in the sum of $750.00 which covered the rent for the months of March and April, 1929. (This check, however, was returned to the plaintiff because it was incorrectly marked as payment for rent for the months of April and May.) Accompanying the check was a letter signed by the president of the plaintiff corporation which set forth that this rent was being paid with the distinct understanding that no lease would be signed until the terms thereof were satisfactory to both parties; that the plaintiff was unwilling to bind itself to the terms of the lease which was submitted in August of 1928, and, further, that, if these parties were unable to negotiate a contract, the plaintiff had other property in mind which it desired to lease. Under these facts and circumstances, it is clear that no lease was in existence at this time, as defendant's offer was not acceptable to plaintiff, and defendant was therefore in no way bound by its offer.

There does not now seem to be any dispute as to these facts, but the evidence is conflicting as to what occurred at a meeting in the City of Monroe at the office of the attorney for the defendant organization on June 27, 1929. At this meeting were the president and the vice-president of the plaintiff corporation, and an officer and the attorney for the defendant, and the attorney's son, who was himself a practicing attorney. According to plaintiff's witnesses, at this meeting all of plaintiff's previous objections to the lease as prepared by defendant's attorney were waived, and the lease, together with the notes, was signed by the plaintiff's vice-president. This lease was not signed by any representative of the defendant, because, according to plaintiff, certain officers who were required to sign on defendant's behalf were not present at the meeting, and, again according to plaintiff, the lease was left with the attorney to be signed later by these officers. According to defendant's witnesses, its attorney refused to enter into any negotiations with the plaintiff at this meeting of June 27, because plaintiff, although occupying the premises, had paid no rent to defendant. He refused to discuss any negotiations for a lease until plaintiff had paid the past due monthly rent, and informed plaintiff's officers that he did not consider it a desirable tenant. Defendant's witnesses testified that plaintiff desired to execute non-negotiable promissory notes for the monthly rent, and even at this time objected to certain provisions of the lease, and that the lease was not executed at this meeting, nor were the rent notes signed at this time. According to the testimony of defendant's witnesses, although the original lease called for negotiable notes, on the

same day, after the meeting, plaintiff through its attorney mailed to defendant remittance for the rent past due for the months of March, April, and May, and enclosed a series of 57 non-negotiable notes, on each of which had been written "Rent Note", and these notes were payable to the defendant instead of to its order, as called for in the lease prepared by defendant's attorney.

The lease was never executed by the defendant, although its execution was requested by plaintiff's attorney on numerous occasions, defendant informing plaintiff that there was no lease in existence between the parties. On or about January 1, 1931, plaintiff vacated the premises, and instituted the present damage suit on March 21, 1931.

It is significant that plaintiff's president in his testimony admitted that he wrote the words "Rent Note" on the notes which had been prepared by defendant's attorney and described in the lease, and, further, that he scratched something out thereon, although the record does not disclose what words he marked out on the notes. It is also significant that, although according to plaintiff the lease which its witnesses testified was executed and left with defendant at the meeting of June 27 for the purpose of being signed by certain officers of the defendant who were not present at the meeting, the record discloses that the lease as prepared by defendant's attorney was to be signed by the consul commander of the

defendant organization, who had full authority to do so by a resolution of the organization, and who was present at the meeting of June 27, and that it was not necessary for any other official of the defendant organization to execute the lease.

In our opinion, from an analysis of all the testimony, the plaintiff itself fully realized that it was not occupying the premises under the terms of the lease drafted by defendant's attorney, but was merely occupying the premises on a month-to-month basis.

The district judge, after hearing the witnesses, was of the opinion that no contract was ever entered into by the plaintiff and the defendant, that they never came to a complete understanding in regard to the lease, and that the plaintiff had failed in its proof. The judge appears to have been correct in his interpretation of the testimony, and the record does not disclose that he was manifestly erroneous in his appreciation of the facts of this case.

In this court plaintiff contends that the defendant had the lease in its possession and remained silent to repeated demands that it execute the lease and by such silence assented to it. The testimony of plaintiff's own attorney shows that the defendant was not silent as to the lease. This attorney had numerous conferences with defendant's attorney as to why the defendant did not execute the lease, and no agreement was ever reached by the two attorneys. Plain-

tiff's argument as to assent by silence therefore has no merit.

For the reasons assigned, the judgment appealed from is affirmed; plaintiff to pay all costs.